IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SURREY INVESTMENT SERVICES,　)
INC., and EDWIN H. FERGUSON,　)
JR., Trustee,　)
　)
　　　　　Appellants,　)
　)
　v.　)　　Civil Action No.: 1:09cv00145
　)
ZACHARY STAN SMITH, Debtor,　)
　)
　　　　　Appellee.　)

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

Surrey Investment Services, Inc. ("SIS"), and Edwin H. Ferguson, Jr., Chapter 7 Trustee ("Trustee"), appeal the decision of the Bankruptcy Court determining that the debtor, Zachary Stan Smith ("Smith" or the "Debtor") is entitled to a credit for allowed administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A). For the reasons stated herein, the Bankruptcy Court's decision is reversed, and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

I.　**FACTS AND PROCEDURAL HISTORY**

Pre-petition, SIS sued Smith, its former employee, in state court for breach of contract, unjust enrichment, unfair trade practices, and misappropriation of trade secrets, and obtained a

preliminary injunction to enforce a non-compete agreement. (Doc. 3-13; Doc. 3-14 at 14-15.) On February 15, 2006, Smith asserted a counterclaim that sought past wages and damages to his business allegedly resulting from issuance of the preliminary injunction ("Cause of Action"). (Doc. 3-14 at 8-15.)

On June 8, 2006, Smith filed for relief under Chapter 7 of the Bankruptcy Code. In so doing, he failed to disclose the Cause of Action as an asset on his schedules. (Doc. 3-7 ("Order to Re-Open Chapter 7 Case").) The state lawsuit, including the Cause of Action, appears to have remained essentially dormant during the bankruptcy proceedings, although Smith apparently incurred some attorneys' fees and expenses during this time. Smith received his discharge on December 5, 2006, and on January 3, 2007, the Bankruptcy Court discharged the Trustee and closed the case. (Docs. 3-4, 3-5.)

Immediately thereafter, Smith began prosecuting the Cause of Action and incurred expert consultant fees (for testimony as to the value of his potential damages) and attorneys' fees. See In re Smith, No. 06-50738, 2008 WL 5084184, at *3 (M.D.N.C. Nov. 25, 2008) (Doc. 4-13). On about February 14, 2007, for reasons not explained by counsel or the record, Smith's attorney learned of the expert's damages assessment and sent an email to the

2

Trustee to report on the same, copying Smith. (Doc. 4-9 at 32-33; Doc. 4-13 at 4-5.)

The Trustee, learning of this new information, moved to reopen the bankruptcy case, arguing that Smith had an undisclosed asset worth possibly in excess of $44,000.00. (Doc. 3-6.) On May 11, 2007, the Bankruptcy Court reopened the case on the ground that the Cause of Action had not been listed properly in Smith's schedules and reappointed the Trustee. (Doc. 3-7.)

The Trustee elected to sell the Cause of Action rather than to prosecute it. After negotiating with both Smith and SIS, the opposing parties to the Cause of Action, the Trustee moved for court approval to sell the estate's interest in it to Smith for $12,500.00. (Doc. 3-8.) SIS objected, claiming that it was prepared to pay $15,000.00. (Doc. 3-9.) Smith then filed a Motion to Value Asset, stating that he had invested over $21,000.00 in fees for the attorney and the expert consultant. Smith argued that any offer he made should be deemed increased by the amount of "capital" he had invested in the Cause of Action to reflect the post-petition value he allegedly added to the estate.[1] (Doc. 3-10.)

_____

[1] Although Smith provided expert testimony on valuation at an April 2, 2008, hearing, the record does not reflect a determination of the Motion to Value Asset. (Doc. 3-12.)

3

On May 21, 2008, the Bankruptcy Court approved the $12,500.00 sale of the Cause of Action to Smith. (Doc. 4-2.) A week later, SIS moved for reconsideration, primarily on the basis that it had increased its offer to $15,500.00 and the Trustee had withdrawn his Motion to Approve. (Doc. 4-3.)

On July 15, 2008, the Bankruptcy Court granted SIS' Motion to Reconsider and set out a procedure for the Trustee to auction the Cause of Action ("Reconsideration Order"). The Reconsideration Order permitted Smith to apply for an administrative expense allowance for those fees and expenses he incurred in connection with the Cause of Action and directed that, to the extent such expenses were allowed, he be entitled to credit bid them against the purchase price of the Cause of Action. (Doc. 4-6.) Smith timely filed a Motion to Allow Administrative Expenses ("Application"). (Doc. 4-7.) SIS objected, arguing that the expenses were not necessary to preserve the estate under 11 U.S.C. § 503(b)(1)(A) and, further, did not qualify as an award to professionals under section 503(b)(2). (Doc. 4-8.)

The Bankruptcy Court held a hearing on Smith's Application on October 15, 2008. SIS, the Bankruptcy Administrator, and the Trustee opposed it, although the Bankruptcy Administrator later withdrew his objection. Smith's Application sought an

4

administrative expense allowance not only for expenses incurred while his bankruptcy case was closed but also for attorneys' fees and expenses he incurred during the pendency of the bankruptcy. (Doc. 4-7.) The Bankruptcy Court denied Smith's claim except to the extent he incurred expenses "between the date that the case was closed and the date that it was reopened."[2] *In re Smith*, 2008 WL 5084184, at *2 & *3. As to the fees and expenses incurred during the period the bankruptcy case was closed, the Bankruptcy Court stated:

> The Debtor testified concerning his prosecution of the Lawsuit. He testified that he notified the Trustee of the lawsuit at his first meeting of creditors. The Debtor believed the rights to the Lawsuit reverted to him after the case was closed. The Debtor then took steps to prosecute the case, including retaining counsel and hiring a consultant upon the advice of his counsel. The Debtor also testified that the consultant was employed (a) to determine the potential amount of the damages that he sought and (b) to testify as an expert witness as to damages. Finally, the Debtor testified that he was copied with an e-mail to the Trustee, by which the Trustee was made aware of the consultant's findings as to damages.

*In re Smith*, 2008 WL 5084184, at *3. After reviewing the billing records, the court found that Smith incurred $3,930.70 in attorneys' fees and expenses and $7,200.00 in "expert consultant fees" during the closed period. (Id. at *2; Doc. 4-12.) The Bankruptcy Court concluded that these fees and

---

[2] Smith does not on appeal contest the denial of his request for credit for expenses incurred while his bankruptcy case was open.

5

expenses were necessary to preserve the estate pursuant to 11 U.S.C. § 503(b)(1)(A) and on November 5, 2008, entered an Order ("Administrative Expense Order") and separate Memorandum Opinion ("Memorandum Opinion") granting Smith's Application for a credit to that extent. (Docs. 4-11, 4-12.) The Bankruptcy Court expounded its rulings in a "Supplemental Memorandum Opinion Granting Administrative Expenses." _In re Smith_, 2008 WL 5084184, at *1-*3.

SIS and the Trustee timely appeal the Administrative Expense Order. (Doc. 2-2.)

## II. ANALYSIS

This court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a). The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law _de novo_. Fed. R. Bankr. P. 8013; <u>Devan v. Phoenix Am. Life Ins. Co. (_In re_ Merry-Go-Round Enters., Inc.)</u>, 400 F.3d 219, 224 (4th Cir. 2005). The court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

The parties raise two preliminary challenges. Smith seeks to dismiss the appeal because he claims SIS and the Trustee

6

appealed the wrong order. SIS[3] challenges Smith's standing to seek an allowance of administrative expenses because they were paid by Smith's wholly-owned corporation. Each contention is addressed below.

### A. Whether SIS Appealed the Correct Order

Smith argues that SIS should have appealed the Reconsideration Order and cannot now "collaterally attack" it by appealing the Bankruptcy Court's later allowance of the administrative expenses claim. (Doc. 7 at 8-9.) He contends that the Reconsideration Order set forth the procedure by which he would be permitted to file an administrative expense claim and authorized him to credit bid any allowed expense claim at the auction. (Doc. 7 at 8.) SIS responds that the Reconsideration Order was not final because it only permitted the *filing* of an administrative expense claim. (Doc. 8 at 1.) Had no administrative expense claim been filed timely, SIS observes, the administrative expense issue would have been rendered moot. (Doc. 8 at 1.) Neither party cites any supporting authority.

The court finds Smith's argument unpersuasive. The Reconsideration Order did not determine the scope or allowance

---

[3] Although both SIS and the Trustee signed the Notice of Appeal (Doc. 2-2), the Trustee did not join SIS' brief or reply brief. (Docs. 6, 8).

of any claim but only set forth the procedure for bidding. While it provided that "the Debtor shall have the right to credit bid the amount of any allowed administrative expense claim" (Doc. 4-6 at 2-3), whether any claim determination had to be made depended solely on whether the Debtor even filed an application for an allowance. See Grundy Nat'l Bank v. Looney (*In re Looney*), 823 F.2d 788, 790 (4th Cir. 1987) (finding bankruptcy court order "not a final order because it does not resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights of even one of the parties"). The credit bid permitted by the Bankruptcy Court turns upon the allowance of an administrative expense and, therefore, is directly affected by the determination of the Debtor's Application and the Administrative Expense Order. Thus, the Reconsideration Order is not a final order subject to immediate appeal.

The Administrative Expense Order, by contrast, determined the allowance of administrative expenses and left none of Smith's claims subject to further resolution. See Devan v. Simon DeBartolo Group, L.P. (*In re* Merry-Go-Round Enterprises, Inc.), 180 F.3d 149, 154 (4th Cir. 1999) (bankruptcy court order finding claim was a Chapter 11 administrative claim rather than a Chapter 7 one described as a "final order"). Although the

8

consequences of that determination have not unfolded in the anticipated auction, no further action by the Bankruptcy Court is necessary to finally determine Smith's administrative expense claims.

Thus, SIS appealed an appropriate order.

**B. Standing**

SIS argues that because Smith is not the party who provided the service, he lacks standing under section 503(b)(2), which SIS contends is the only basis for recovery of the expenses at issue. (Doc. 6 at 27-28; Doc. 8 at 8-9.) SIS also argues that "the uncontroverted evidence" demonstrates that all fees in question were paid by Smith's wholly-owned corporation, Surrey Financial Group, Inc., and not by Smith personally. (Doc. 6 at 27; Doc. 8 at 8.) SIS urges that "[c]orporate forms should be respected," and "the Debtor has not carried his 'heavy' burden of showing that he is entitled to an administrative priority claim in this case." (Doc. 6 at 27-28.)

It is true that some subsections of section 503(b) limit applicants to creditors and other specific types of claimants. Section 503(b)(2), for example, by reference to section 330(a), limits recovery to specified entities, including the Trustee and certain professionals providing the service. See, e.g., In re Lickman, 273 B.R. 691, 700 (Bankr. M.D. Fla. 2002) (precluding

9

Chapter 7 debtor from stepping into the shoes of his attorneys to assert administrative claim for fees); *In re Brown*, 82 B.R. 869, 871 (Bankr. S.D. Ohio 1987) (expressing doubt that section 503(b)(2)'s specific limitations on who may seek allowance permits subrogation of attorneys' fee claim).

Section 503(b)(1)(A) is not so limited, and the parties have provided no authority that it is. It provides simply that an "entity" may seek allowance of an administrative expense without reference to any specific type of entity. Smith qualifies as such an "entity." See 11 U.S.C. § 101(15) (defining "entity" to include a "person") & 101(41) (defining "person" to include an "individual"). There is also no dispute that Smith, and not his wholly-owned corporation, was the defendant/counterclaim plaintiff in the state lawsuit. Thus, employment of the attorney and expert in connection with that case were liabilities running to Smith. The court concludes, therefore, that Smith has standing under section 503(b)(1)(A) to claim an entitlement to administrative expenses for which he was liable.

In this appeal, however, SIS maintains that section 503(b)(1)(A) is unavailable because section 503(b)(2) provides the exclusive basis for Smith's claim. Thus, whether section 503(b)(2) limits Smith's recovery of attorneys' fees and

10

expenses becomes the principal issue to be resolved, to which the court now turns.

### C. Whether Allowance of Smith's Attorneys' Fees and Expenses is Limited to Section 503(b)(2)

Smith rests his claim for allowance solely on 11 U.S.C. § 503(b)(1)(A), which allows payment for "the actual, necessary costs and expenses of preserving the estate." (Doc. 6 at 1; Doc. 7 at 1, 7, 9-15.) He argues that his attorneys' fees and expert expenses preserved the Cause of Action by giving it value and, therefore, the Bankruptcy Court correctly determined that they fit within section 503(b)(1)(A).[4] SIS argues that such fees and expenses are professional expenses compensable only under section 503(b)(2), and that the required retention of the professionals by the Trustee and approval by the court were never obtained. Because Smith personally retained these professionals after his bankruptcy case was closed, SIS contends, he failed to comply with the Bankruptcy Code and cannot seek recovery through the guise of section 503(b)(1)(A) that which is barred under section 503(b)(2).

---

[4] Section 503(b)(1)(A) of Title 11 provides in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – (1)(A) the actual, necessary costs and expenses of preserving the estate including -- . . . wages, salaries, and commissions for services rendered after the commencement of the case. . . .

11

A debtor bears the burden of proving entitlement to administrative expense by a preponderance of the evidence. _Devon_, 180 F.3d at 157 (burden on claimant); _In re_ _Worldwide_ _Direct, Inc._, 334 B.R. 112, 120 (Bankr. D. Del. 2005) (preponderance of the evidence); _In re_ Boling Group, L.L.C., No. 01-81304C-11D, 2002 WL 31812671, at *4 (Bankr. M.D.N.C. Dec. 13, 2002) (same). The "burden of persuasion is heavier when the claimant is the debtor who has been discharged of debts of the same creditors that will necessarily receive a diminished pro rata distribution if the administrative expense claim is allowed." _In re_ Lickman, 273 B.R. 691, 697 (Bankr. M.D. Fla. 2002). Whether Smith's attorneys' fees and expert expenses may be allowed as an administrative expense under section 503(b)(1)(A) or are solely within the province of section 503(b)(2) is a question of law which this court considers _de_ _novo_. Ford Motor Credit Co. v. Reynolds & Reynolds Co. (_In re_ JKJ Chevrolet, Inc._), 26 F.3d 481, 483 (4th Cir. 1994).

**1. Attorneys' Fees and Expenses under Section 503(b)(2)**

Section 503(b)(2) allows as an administrative expense "compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). Section 330(a) allows an award to a Trustee or professional person employed under section

327, among others, for reasonable compensation and actual, necessary expenses. 11 U.S.C. § 330(a)(1)(A) & (B). Section 327, in turn, authorizes the Trustee, with bankruptcy court approval, to employ certain named professionals, including attorneys, appraisers, and "other professional persons." 11 U.S.C. § 327(a).

The interplay of these various statutory provisions was addressed recently in Lamie v. United States, 540 U.S. 526 (2004), a case that originated within the Fourth Circuit. There, Lamie, a debtor's attorney, sought compensation for legal services he provided the debtor after the case was converted from Chapter 11 to Chapter 7. Although Lamie had been court-appointed to represent the debtor in the Chapter 11 case, the Court denied his application for payment of legal fees for services rendered post-conversion because after the Chapter 7 conversion he was not appointed under, nor approved by, the bankruptcy court under section 327, and thus he was not eligible for compensation under section 330(a). The Court stated that section 327's plain limitation on a debtor's incurring debts for professional services with a Chapter 7 trustee's approval is not "absurd" but rather advances the trustee's responsibility for preserving the estate. The Court concluded:

13

> [W]e hold that § 330(a)(1) does not authorize
> compensation awards to debtors' attorneys from estate
> funds, unless they are employed as authorized by
> § 327. If the attorney is to be paid from estate
> funds under § 330(a)(1) in a Chapter 7 case, he must
> be employed by the trustee and approved by the court.

540 U.S. at 538-39.

In the present case, the Bankruptcy Court found that _Lamie_ was not controlling. First, it distinguished _Lamie_ on the ground that it "addressed the reimbursement of [s]ection 327 professional fees and expenses, which might be administrative expenses pursuant to [s]ection 503(b)(2), rather than preservation expenses, which might be administrative expenses pursuant to [s]ection 503(b)(1)(A)." _In re_ _Smith_, 2008 WL 5084148, at *3. Second, it stated that _Lamie_ did not involve a case where expenses were incurred after the bankruptcy case was closed. (_Id._) To apply _Lamie_ to Smith's case, the court concluded, would make section 327 compliance "an absurdity" because the bankruptcy court's jurisdiction ceased upon closing of the case. (_Id._) Smith adopts these reasons and adds that _Lamie_ "purely interpreted sections 327 and 330 of the Code" and "nowhere mentions section 503(b)." (Doc. 7 at 16.) He further argues that section 503(b) provides a nonexclusive list of types of allowable administrative expenses, each type being separate

14

and distinct, thus not precluding recovery here under section 503(b)(1)(A).

Although Smith's Application sought an allowance for expenses incurred while the bankruptcy case was open as well as closed (Doc. 4-7, including attached bills), Smith does not challenge on appeal the Bankruptcy Court's denial of the former. Had the bankruptcy case been open during the period in which the expenses at issue were incurred, involvement of the Trustee and approval of the Bankruptcy Court would have been required, and allowance permitted only pursuant to section 503(b)(2). The determinative question, therefore, is whether the fact that the services occurred while the bankruptcy case was closed alters this outcome. Neither party has cited any Fourth Circuit case law on point. Smith argues that because the estate was closed and the Trustee dismissed, "[t]here was no one to which the debtor could apply" to employ a professional under section 327. (Doc. 7 at 17.)

The court concludes that section 503(b)(1)(A) should not be available in this case to end-run the requirements of section 503(b)(2) and the related obligations under sections 327 and 330(a), and thus that Smith's allowance was in error.

First, the analysis begins with the admonition that the provisions of the Bankruptcy Code governing administrative

15

expenses "must be narrowly construed." Devon, 180 F.3d at 157;

City of White Plains New York v. A & S Galleria Real Estate, Inc. (In re Federated Dept. Stores, Inc.), 270 F.3d 994, 1000 (6th Cir. 2001) (claim for administrative expense "are to be strictly construed"); Woburn Assocs. v. Kahn (In re Hemmingway Transport, Inc.), 954 F.2d 1, 5 (1st Cir. 1991) ("strict construction") (citing other circuits); In re Patient Educ. Media, Inc., 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) (section 503(b)(1)(A) must be "narrowly construed"). This is because administrative expense claims allowed under section 503 are accorded first priority status and are paid directly from the estate ahead of other claims, contrary to the otherwise pro rata distribution of expenses. Consequently, they reduce the funds available for other claimants.

The plain language of section 503(b)(2) controls the payment of professional fees. As the Lamie Court held, courts should apply the plain language of the statute as the first, and often only, step. See 540 U.S. at 534. Where a subsection of section 503(b) directly addresses the type of administrative expense sought, those restrictions cannot be avoided by appealing to the non-exclusive nature of section 503(b). See In re Elder, 321 B.R. 820, 829 (Bankr. E.D. Va. 2005) (denying creditor's claim for reimbursement without considering the

16

creditor's section 503(b)(1)(A) argument where section 503(b)(3)(B) clearly allowed a creditor to recover its attorneys fees through section 503(b)(4), provided the recovery occurred after court approval). An extension of section 503(b)(1)(A) also runs counter to the rule of statutory construction that a court should not construe a general statute to conflict with a specific statute. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."). "However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment." Faircloth v. Lundy Packing Co., 91 F.3d 648, 657 (4th Cir. 1996) (internal quotation marks omitted; quoting Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 107 (1944)).

Second, to apply section 503(b)(1)(A) to professional compensation would render section 503(b)(2) superfluous and avoid the requirements and purposes of section 327. See, e.g., In re Keren Ltd. Ptshp., 189 F.3d 86, 88 (2d Cir. 1999) ("[A] broker or other professional generally may not avoid the requirements of Sections 327 and 330 by seeking administrative expense allowance under Section 503(b)(1)(A) rather than Section 503(b)(2)."); In re Amanat, 340 B.R. 713, 718 (Bankr. S.D.N.Y.

17

2006) ("Although the issue there [in <u>Lamie</u>] was the construction of § 330(a)(1) and not § 503(b)(3)(A) or § 503(b)(1), the Supreme Court made clear it [sic] that there is no discretionary authority under Chapter 7 to award legal fees from estate funds unless the attorneys are retained by court order."); <u>In re Richendollar</u>, No. 04-70774, 2007 WL 1039065, at *6 (Bankr. N.D. Ohio Mar. 31, 2007) (finding that "[a]bsent employment by Trustee with the approval of the court, under <u>Lamie</u> [the debtor's attorney] is not otherwise entitled to compensation from the estate as an administrative expense under the more general provision of § 503(b)(1)(A) even if his efforts preserved or protected property of the Chapter 7 estate."); <u>In re Blurton</u>, 334 B.R. 602, 607 (Bankr. W.D. Tenn. 2005) ("Allowing a debtor or an attorney to circumvent the Supreme Court's ruling [in <u>Lamie</u>] by simply filing a request for payment of the fees under § 503(b)(1) would amount to quashing the trustee's opportunity to preserve the estate."); <u>In re Garden Ridge Corp.</u>, 326 B.R. 278, 280 (Bankr. D. Del. 2005) (finding that allowing compensation under section 503(b)(1)(A) would render section 327(a) nugatory and contravene Congress' intent in providing for prior approval); <u>In re Concrete Products, Inc.</u>, 208 B.R. 1000, 1010 (Bankr. S.D. Ga. 1996) (sections 503(b)(2), 330(a), and 327 provide the exclusive means by which a trustee

18

or debtor-in-possession may retain professionals and contain safeguards intended by Congress to apply to the retention and payment of professionals).

Courts have reached the same result in cases in which a bankruptcy court had previously denied the hiring of a professional under section 327. "The authority to pay administrative expenses for professionals . . . is found not in section 503(b)(1)(A) but in section 503(b)(2) . . . ." <u>F/S Airlease II, Inc. v. Simon (<i>In re</i> F/S Airlease II, Inc.)</u>, 844 F.2d 99, 108-09 (3d Cir. 1988) (finding that if a professional employed by a trustee was able to be compensated under section 503(b)(1)(A), "it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval") (professional a broker); <u>accord</u> <i>In re</i> <u>Milwaukee Engraving Co., Inc.</u>, 219 F.3d 635, 637 (7th Cir. 2000) ("One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2)."); <u>In re Albrecht</u>, 245 B.R. 666, 670-71 (10th BAP 2000) (rejecting equity exception in section 503(b)(1)(A)), <u>aff'd</u>, 233 F.3d 1258 (8th Cir. 2000).[5]

---

[5]   Prior to the Supreme Court's decision in <u>Lamie</u>, the Fourth Circuit stated, in <i>dicta</i>, that the fees of a Chapter 11 debtor's attorney who could not recover under sections 503(b)(3) & (4), which allow compensation only for certain services of a creditor's attorney, "may qualify as an administrative expense, if at all, under

Third, the Supreme Court in <u>Lamie</u> noted how a debtor's attorney might be compensated by the estate, but nowhere does it mention section 503(b)(1):

> Compensation for debtors' attorneys working on Chapter 7 bankruptcies, moreover, is not altogether prohibited. Sections 327 and 330, taken together, allow Chapter 7 trustees to engage attorneys, including debtors' counsel, and allow courts to award them fees. <u>See</u> §§ 327(a) and (e).

540 U.S. at 537. The Supreme Court also noted that compensation for debtors' attorneys in Chapter 12 and 13 bankruptcies is allowable specifically under section 330(a)(4)(B). <u>Id.</u> at 537. The absence of any reference to section 503(b)(1)(A) is notable, but not controlling.

Fourth, the services provided by the attorney here fall within those contemplated by section 327. Section 327(a) permits the trustee, with the court's approval, to "employ attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title." A Chapter 7 trustee shall "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1). In undertaking this duty, Chapter 7

---

§ 503(b)(1)(A)." <u>Goodman v. Phillip R. Curtis Enterprises, Inc.</u>, 809 F.2d 228 (4th Cir. 1987). Notably, the debtor-in-possession had obtained the bankruptcy court's approval to hire the attorney to pursue the litigation in question for which a settlement was proposed post-confirmation. The Fourth Circuit has not indicated what it meant by this reference, but it did not hold that recovery was in fact available under section 503(b)(1)(A), and this <i>dicta</i> lacks persuasiveness post-<u>Lamie</u>.

trustees employ attorneys pursuant to section 327 to pursue causes of action which belong to the estate and, under section 327(e), may hire a debtor's attorney specifically to prosecute a cause of action. Lamie, 540 U.S. at 537.[6]

To be sure, as the Bankruptcy Court correctly noted, compliance with section 327 is not possible while the estate is closed and the trustee discharged – a situation that Lamie did not directly address. It is therefore easy to imagine how consideration of section 503(b)(1)(A) seemed an attractive way to resolve Smith's dilemma. The real source of the problem and thus its solution, however, lay with Smith.

Smith neglected to list the Cause of Action as an asset on his schedules. The parties concede that when a debtor's claim "was not listed on his schedules, it remains property of the

---

[6] In re Central Idaho Forest Products, 317 B.R. 150 (Bankr. D. Idaho 2004), cited by SIS, is not on point. There, creditors who discovered undisclosed assets after the Chapter 7 bankruptcy case was closed sought recovery of their attorneys' fees under sections 503(b)(1)(A) and 503(b)(3)(B). There was no dispute that the creditors' actions provided a benefit to the estate, which recovered concealed property. Despite the fact that none of the other creditors objected and the trustee supported the motion, the court declined the award. The court held that section 503(b)(1)(A) did not apply because the creditors did not transact with the debtor-in-possession or estate. Thus, the court did not reach the issue whether section 503(b)(1)(A) otherwise would be available. However, the court did reject an appeal to the non-exclusive nature of section 503(b), stating that to so hold would trump the express requirements of the statute. In the end, the court held that the creditors were barred by their failure to move to reopen the bankruptcy and seek court approval, as required by the plain meaning of section 503(b)(3)(B). 317 B.R. at 155-58.

21

estate and may be asserted, if at all, only by the chapter 7 trustee." Luzardo v. America's Servicing Co. (In re Luzardo), No. 08-11923-SSM, 2008 WL 4560670, at *2 (Bankr. E.D. Va. Oct. 9, 2008); see 4 Norton Bankr. L. & Prac. 3d § 74:14 ("Chapter 7 debtors or other parties who later sought to pursue assets which had not been abandoned have been found either to be without standing or to be in violation of the automatic stay.") (citing cases).[7]

Bankruptcy Rule 5010 on its face grants a debtor authority to move to reopen a case under section 350(b) "to administer assets, to accord relief to the debtor, or for other cause." Smith, upon believing that his Cause of Action had value, could have applied to the Bankruptcy Court to reopen the case in order to provide the Trustee an opportunity to pursue or abandon the

---

[7] Under section 541(a), the commencement of a bankruptcy case results in the creation of a bankruptcy estate consisting of all legal and equitable property interests of the debtor, including causes of action belonging to a debtor when the case commences. E.g., In re Coastline Care, Inc., 299 B.R. 373, 377-78 (Bankr. E.D.N.C. 2003) (citing cases). Here, Smith asserted the Cause of Action in the state lawsuit several months prior to filing his Chapter 7 bankruptcy petition. (Doc. 3-14.) Properly scheduled assets not otherwise administered at the time the case is closed are abandoned to the debtor by operation of 11 U.S.C. § 554(c). On the other hand, "[u]nless the court orders otherwise, property of the estate that is not abandoned under [section 554] and that is not administered in the case remains property of the estate." 11 U.S.C. § 544(d). The Cause of Action, because it was unscheduled property, therefore remained property of the estate after the case was closed. In re Hamlett, 304 B.R. 737, 741 (Bankr. M.D.N.C. 2003) (citing cases).

22

asset and to consider employment of the Debtor's attorney under section 327. For,

> [e]ven after a case is closed, an estate continues to retain its interest in unscheduled property. One consequence of this principle is that a debtor may be unable to assert a cause of action after the bankruptcy if the cause of action was not scheduled. *In re Wilson,* 94 B.R. 886, 892 (Bankr. E.D. Va. 1989). Therefore, before a debtor seeks to enforce such a cause of action, he may be required to reopen the bankruptcy case, in order to give the trustee an opportunity to pursue or abandon the cause of action. *In re Cundiff,* 227 B.R. 476 (6th Cir. BAP 1998).

*In re* Lehosit, 344 B.R. 782, 784 (Bankr. N.D.W. Va. 2006).[8]

Instead of seeking to reopen his case, Smith unilaterally undertook to retain a witness to testify to the value of his Cause of Action, incurring both attorneys' fees and expert consultant fees, at a time when he could not have properly asserted the Cause of Action. His course of action necessarily deprived the Trustee of the opportunity to evaluate the Cause of

---

[8] Where a bankruptcy case has been closed and the debtor pursues a lawsuit related to a claim that was not scheduled, he may be barred by judicial estoppel or face a direct challenge to his standing. This stems from the rule that "[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." Nat'l Am. Ins. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999). The remedy in such cases is often for the debtor to seek to reopen the bankruptcy case to schedule the asset. See *In re* Hamlett, 304 B.R. 737, 742 (Bankr. M.D.N.C. 2003) (reopening a bankruptcy case where a debtor faced a judicial estoppel defense to an unscheduled tort claim, noting that "the trustee in a Chapter 7 case is the representative of the bankruptcy estate and is the only party with standing to prosecute or pursue claims that constitute property of the estate").

Action to determine whether to employ an attorney or expert before expenses were incurred. Indeed, the Trustee has consistently opposed Smith's request for allowance, and the Bankruptcy Court denied recovery of fees and expenses incurred during the pendency of Smith's bankruptcy. This course of action also deprived the Bankruptcy Court of its approval authority under section 327. Had Smith properly moved to reopen the case, the Supreme Court's holding in <u>Lamie</u> would have required him to seek Trustee and court approval prior to incurring the expense of his attorney and expert before such services could be considered an allowable administrative expense.

Admittedly, Smith claims that he believed the Cause of Action was his to pursue after his bankruptcy case was closed.[9] This allegedly mistaken understanding of the law, however, does

---

[9] Smith contends that he told the Trustee about the Cause of Action. Assuming this is true, it still would not have relieved Smith and his counsel of their obligation to have scheduled the asset in the bankruptcy. <u>See</u>, <u>e.g.</u>, <u>Jeffrey v. Desmond</u>, 70 F.3d 183, 186 (1st Cir. 1995) (finding debtors' claim that they and their attorney disclosed the asset at the creditor's meeting, "even if true, has no bearing on the outcome" [because] "[t]he law is abundantly clear that the burden is on the debtors to list the asset or amend their schedules, and that in order for property to be abandoned by operation of law pursuant to 11 U.S.C. § 554(c), the debtor must formally schedule the property pursuant to 11 U.S.C. § 521(1) before the close of the case"); <u>Vreugdenhill v. Navistar Int'l Transp. Corp.</u>, 950 F.2d 524, 525-26 (8th Cir. 1991) (rejecting abandonment claim where debtor did not schedule asset but claimed to have informed trustee and requested him to pursue it).

not provide him authority which the Bankruptcy Code otherwise withholds. <u>Official Comm. of Equity Sec. Holders v. Mabey</u>, 832 F.2d 299, 302 (4th Cir. 1987) (equitable powers "not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules"). His testimony is also undercut, in part, by his counsel's post-bankruptcy e-mail to the Trustee containing the expert's valuation, the very presence of which reveals that there remained some concern over the continued role of the estate. While Smith argues that the result is harsh, the situation is no harsher than that of debtors and others in an open bankruptcy case who fail to comply with section 327. Indeed, the attorney in <u>Lamie</u> had received court approval in the Chapter 11 case but was denied payment of fees by the estate for services provided after conversion of the case because he had not complied with section 327 in the Chapter 7 case.

At oral argument, Smith pointed to <u>Lickman</u>, <u>supra</u>, 273 B.R. 691, as support for the proposition that section 503(b)(1)(A) can be used where professional fees and expenses are incurred post-bankruptcy closing in connection with an unscheduled asset. Smith's reliance is misplaced. In <u>Lickman</u>, the debtor mistakenly failed to schedule an inheritance and pursued probate litigation over it. When the trustee learned of it, she

25

successfully sought to reopen the bankruptcy case. The debtor
then applied for reimbursement of fees and expenses incurred in
pursuing the probate claim, which the trustee opposed. The
bankruptcy court denied recovery under section 503(b)(2),
stating:

> [T]he statutory framework of the Bankruptcy Code makes
> clear that responsibility for administering the
> bankruptcy estate resides solely in the trustee. 11
> U.S.C. § 323. In this case, the debtor deliberately
> failed to disclose a significant asset of the estate,
> however mistakenly, and usurped for herself the
> administration of that asset, precluding the trustee
> from performing her responsibilities to the estate.
>
> The debtor contends that her actions should be
> construed similarly to a trustee's because ultimately
> they inured to the benefit of the bankruptcy estate.
> The debtor's motivation, however, was her own self-
> interest . . . .
>
>                   \*     \*     \*
>
> The allowance of an administrative expense in these
> circumstances would encourage conduct that is
> antithetical to the statutory framework by which a
> bankruptcy case is to be administered. The debtor did
> in the probate case that which she was not entitled to
> do and now seeks to impose the economic consequences
> of her *ultra vires* acts upon the very persons whose
> rights she deprived by her actions.

273 B.R. at 698. In addition, the court *in the alternative*
addressed Lickman's request under section 503(b)(1)(A). This
alternative analysis does not aid Smith, however, because the
court found that, while that section did not limit who may make
an application, "Congress cannot have intended that a

26

professional person could sidestep the specific requirements set forth [in sections 327, 328, 330 and 503(b)(2)] and come in later and claim payment under the general provision of § 503(b)(1)(A) as an actual necessary cost of preserving the estate." 273 B.R. at 700 (quoting *In re* Marlin Oil Co., 83 B.R. 50, 52 (Bankr. D. Colo. 1988)). Noting that one court was wary of adopting an absolute rule barring consideration of such an application where "in exceptional circumstances the totality of the circumstances and the benefit to the estate might outweigh [these] considerations," the court concluded that no such exceptional circumstances were present. 273 B.R. at 700-01. Similarly without adopting such a standard in this case, the court simply notes that Smith, too, fails to demonstrate such exceptional circumstances.[10]

In the end, Smith's predicament flows from his failure to have listed the Cause of Action on his schedules. Had he done so, it would either have been claimed an asset of the estate or

---

[10] At oral argument, Smith's counsel conceded that there was no immediate threat that the Cause of Action would lie fallow or diminish in worth during the roughly 7-week period between the closing of the bankruptcy case and the Trustee's motion to reopen. That "courts don't like things to sit on their dockets without moving," while true, is not compelling evidence of necessity in this case. Moreover, the only parties interested in the Cause of Action are Smith and SIS, the parties to it. It is no wonder the Trustee opposed allowance for any of the professional fees and expenses. Smith's alternative argument -- that allowance under section 503(b)(1)(A) should be had to ensure that the estate does not benefit from unjust enrichment -- fails to demonstrate "exceptional circumstances" where the root of the problem was Smith's failure to schedule the asset.

27

deemed abandoned, thus providing him clear notice of his rights. To permit Smith's claim for recovery now under section 503(b)(1)(A) would excuse debtors who fail to schedule their assets and lead to the anomalous result that Smith would be denied attorneys' fees and expert expenses incurred during the time the bankruptcy case was open and reopened under section 503(b)(2), but granted them when the case was closed solely because of his own failure to seek to reopen the bankruptcy so the Trustee could be reappointed.

The court holds, therefore, that Smith may not fail to schedule the Cause of Action as an asset and fail to move to reopen his case, and then claim, over the Trustee's objection, a credit for administrative expenses for the resulting attorneys' fees under section 503(b)(1)(A) on the ground that his bankruptcy case was closed.

### 2. Expert Fees

The Bankruptcy Court granted Smith a credit of $7,200.00 as an administrative expense for the expert's services to value the Cause of Action in preparation for testifying in the state lawsuit.[11]  Smith contends that, even if the attorney is a

---

[11]  The Bankruptcy Court noted that Smith testified that he took steps to prosecute the Cause of Action, "including retaining counsel and hiring a consultant." *In re Smith*, 2008 WL 5084184, at *3. The record references an engagement letter but does not include the letter

28

professional governed by sections 327 and 330(a), the expert is not and the expenses should be allowed under section 503(b)(1)(A). SIS argues that the expert essentially filled the role of an "appraiser" of an asset of the estate, which role is specifically listed as a professional person in section 327. This is particularly true, SIS argues, because the Cause of Action was the only asset of the estate, rendering the expert's work core to the bankruptcy case. SIS concludes that to the extent Smith retained an expert solely to value the Cause of Action, the expert would be appraising property of the estate and must be hired by the Trustee and approved by the court under section 327. 11 U.S.C. § 327(a).

The Bankruptcy Code does not define an "appraiser." Ordinarily, an appraiser is "[a]n impartial person who estimates the value of something." Black's Law Dictionary 117 (9th ed. 2009) ("Also termed *valuer*"). Smith testified that the expert was hired (1) to determine the potential amount of damages he sought and (2) to testify as an expert witness as to damages. *In re Smith*, 2008 WL 5084184, at *3. In his brief, Smith acknowledges the litigation role of the expert but argues that his work benefitted the estate because, after the bankruptcy

itself. The expert provided billing statements to the Debtor "c/o" his attorney. (Doc. 4-7.)

case was closed, the Cause of Action remained the sole asset of the bankruptcy estate. (Doc. 7 at 11-12.)

Although the Bankruptcy Court did not address the issue, it appears clear that to the extent the expert valued property of the estate he was acting as an appraiser and would, therefore, fall under the plain language of section 327. 11 U.S.C. § 327(a). "Professional persons" is a term of art, however, and in some cases professionals, including those specifically listed in section 327, may not be required to be approved by the court, particularly when hired to serve as an expert witness. *E.g.*, Elstead v. Nolden (*In re That's Entertainment Mktg. Group, Inc.*), 168 B.R. 226, 230 (N.D. Cal. 1994) (accountants, while commonly considered professionals under section 327, are not subject to section 327 when retained by trustee's special counsel, are testifying in collateral litigation, and are not assuming a "central role in the bankruptcy"); accord *In re Action Video, Inc.*, No. 02-52402, 2003 WL 21350081, at *3 (Bankr. M.D.N.C. June 9, 2003) (citing That's Entertainment); *In re First Am. Health Care of Ga., Inc.*, 208 B.R. 996, 998 (Bankr. S.D. Ga. 1996) (accountant retained solely as expert witness to collateral litigation). Thus, to the extent the expert was intended to testify in the Cause of Action, he might not, unlike

Smith's attorney, necessarily be subject to court approval under section 327. The inquiry does not end here, however.

Where an expert witness is deemed not to be a professional person subject to court approval under section 327, it is because it is the court-approved attorney who controls the litigation, not the expert. Reimbursement is made to the attorney for his or her expert witness expenses through section 330. For example, the court in That's Entertainment noted that the Bankruptcy Code did not require prior authorization for litigation expenses (including those of the expert witness in that case) "incurred by attorneys whose employment was authorized by the court under § 327," referencing a bankruptcy court's ability to award an attorney reimbursement for "actual and necessary" litigation expenses under section 330. That's Entertainment, 168 B.R. at 230 n.4, 231 & 231 n.5. Similarly, in In re Napoleon, 233 B.R. 910 (Bankr. D.N.J. 1999), the court noted that the expert witness' contract was not with the trustee but with the court-approved special counsel. The special counsel, not the expert witness, had the right to seek reimbursement for expert witness costs under section 330. 233 B.R. at 914. Accord In re Atra Group, Inc., 308 B.R. 858, 861 (Bankr. N.D. Ill. 2003) (special counsel "will presumably seek reimbursement" of expert witness costs in its fee application);

31

*In re* First Am. Health Care of Ga., Inc., 208 B.R. 996, 998 (Bankr. S.D. Ga. 1996) (debtor-in-possession's criminal counsel may employ and pay expert witness and then seek reimbursement as part of its fee application); *In re* Argus Group 1700, Inc., 199 B.R. 525, 533-34 (Bankr. E.D. Pa. 1996) ("Counsel can seek to be reimbursed the costs of its experts on application to the court pursuant to § 330(a)(1)(B). Whether its application will be granted will depend on whether it has exercised its discretion in the best interest of the estate.").

Here, the expert was hired for litigation purposes, including to provide trial testimony to support a damages claim in Smith's Cause of Action, rather than simply to value any asset of the estate for sale. This is borne out by the fact that the expert witness was hired by or through and certainly, by Smith's testimony, upon the recommendation of trial counsel in the state litigation. Moreover, it strains the facts for Smith to contend that the purpose was to value the sole asset of the estate when he also claims he believed the Cause of Action did not belong to the estate. As with the administrative claim for attorneys' fees, where the case is closed either the Trustee or the debtor may move to reopen it to seek approval for hiring counsel who can then retain such a professional. Neither did so here. Therefore, for the same reasons that Smith may not obtain

32

administrative expense priority for his attorneys' fees, he may not obtain such status for expert expenses.[12]  Moreover, because the court finds that section 503(b)(2) was the only avenue for recovery of the attorneys' fees and expenses herein, Smith's claim is denied on the additional ground that permitting recovery would effectively allow him to impermissibly step into the shoes of the professionals in seeking recovery when only such professionals are permitted to make a claim under section 503(b)(2).  *In re* Lickman, 273 B.R. at 700.

## III. CONCLUSION

For the reasons stated herein, Smith is not entitled under sections 503(b)(1)(A) and 503(b)(2) to a credit based on a claimed allowance of an administrative expense for attorneys' fees and expert expenses incurred during the period his bankruptcy was closed.

---

[12]  In certain circumstances, an application may be made for section 327 approval *nunc pro tunc*.  This avenue does not appear available to Smith.  Principally, Smith did not request an allowance under section 503(b)(2).  Moreover, the Trustee, who is entitled to hire professionals under section 327, opposes the payment of fees.  See *In re EBW Laser, Inc.*, 333 B.R. 351, 356 (Bankr. M.D.N.C. 2005) (noting that a court may approve retention of counsel *nunc pro tunc* "under certain circumstances" but finding that "no motion for *nunc pro tunc* approval of employment has been filed by the Trustee").  It is noteworthy that while Smith also incurred attorneys' fees and expenses during the time the bankruptcy case was open and reopened, the Trustee objected to their recovery as well, and the Bankruptcy Court refused to allow them.  (Doc. 4-7 (Motion to Allow Administrative Expenses and exhibit setting out redacted billing records); Doc. 4-9 at 18-19 (hearing); Doc. 4-13 at 3-5 (Supplemental Order setting out "Eligible Lawsuit Expenses").)

IT IS THEREFORE ORDERED that the Bankruptcy Court's Order of November 5, 2008, is REVERSED, and this case is remanded for further proceedings consistent with this Opinion.


                                        /s/ Thomas D. Schroeder
                                        United States District Judge

October 16, 2009